UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DAVID RUIZ,

                  Petitioner,

         -against-

SUPERINTENDENT K. WALKER,

                  Respondent.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-3787 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On July 8, 2025, *pro se* Petitioner David Ruiz ("Petitioner") commenced this action against Superintendent K. Walker ("Respondent") by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See generally* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, Dkt. 1 ("Petition" or "Pet."). Petitioner is currently serving a 20-year sentence at the Orleans Correctional Facility in Albion, New York, after being convicted by jury in New York State Supreme Court, Queens County, of one count of robbery in the first degree under New York Penal Law § 160.15(4) and two counts of robbery in the second degree under New York Penal Law §§ 160.10(1), (2)(a). *Id.* at 1;[1] Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus at 14, Dkt. 11-1 ("Opposition" or "Opp'n"). Petitioner challenges his conviction on three grounds: (1) that cell site location information ("CSLI") utilized at trial was obtained illegally and that his trial counsel was ineffective for failing to object to its use, (2) that his conviction went against the weight of the evidence, and (3) that his sentence was excessive. Pet. at 5-10.

For the following reasons, the Petition is denied.

---

[1] When citing the Petition, the Court references the page numbers contained in the auto-generated ECF header.

## BACKGROUND[2]

### A. The Robbery

On September 9, 2017, at around 7:45 p.m., Stanislav Yakubov ("Yakubov"), a jeweler, drove onto his block in Fresh Meadows, Queens, and parked his car. Opp'n at 3. There was only one streetlight, located "about one house away from Yakubov's house." *Id.*; *see* State Court Record at SR-045, Dkt. 13-1 (the "Record").

As Yakubov arrived, a surveillance camera on his home recorded "two individuals dressed in dark clothing walking together at the corner where Yakubov's car had just turned. As Yakubov parked in front of his home, the two individuals separated, headed towards opposite sides of the same street, then walked parallel to each other down the street." Opp'n at 3. The individual who walked on the side of the street where Yakubov parked wore "a hoodie and a hat." *Id.* Yakubov, who remained in his car on the phone with a friend, saw that man walk by and described him as "about 5'9" and weighing about 140 pounds." *Id.*; *see* Record at SR046.

Several minutes later, the surveillance camera captured Yakubov opening his car door. Opp'n at 4. But before he got out, Yakubov saw the man again and tried to close the door. *Id.*; Record at SR046. The man prevented him from doing so. He "grabbed the glass of the driver's side window with his left hand and pulled the door open. [He] was not wearing gloves." Opp'n at 4; *see* Record at SR046. He then "pulled Yakubov out of the car and began beating him in the head with a gun." Opp'n at 4; *see* Record at SR046. The other man captured on the surveillance camera joined and began beating Yakubov. Opp'n at 4. He was "also wearing a hoodie, dressed entirely in black," but "stood about 6 feet tall, and weighed about 270 pounds. . . . At one point,

---

[2] The following facts are undisputed unless otherwise indicated.

2

the accomplice's hood came off his head, and Yakubov saw that he was a black man." *Id.*; *see* Record at SR046.

As a result, Yakubov sustained wounds on his forehead and eyebrows.  Opp'n at 5; Record at SR046.  The assailants stole his car keys and approximately $2,500 before entering a "black four-door sedan parked around the corner and fle[eing]."  Opp'n at 4; *see* Record at SR046. Yakubov's wife came outside and called 911, and emergency responders arrived about ten minutes later.  Opp'n at 4-5; Record at SR046.

**B.  New York State Investigation and Trial**

After being taken by ambulance to the hospital, Yakubov spoke with the New York Police Department (the "NYPD") about the incident (the "Robbery").  Opp'n at 5; Record at SR046.  He initially told Detective Malcolm Palmer ("Detective Palmer") "that both men were black."  Opp'n at 5 n.3; *see* Record at SR046-47.  In fact, however, Yakubov had only seen the second man's face. Opp'n at 5; Record at SR047.  As Respondent acknowledges, Yakubov based his initial assertion that both men were black "on an assumption."  Opp'n at 5 n.3; *see* Record at SR047.

A subsequent inspection of Yakubov's car resulted in the recovery of a single "left-hand palm print of good quality" on the glass of the driver's side window, which two NYPD examiners matched to Petitioner.  Opp'n at 5-6.  Based on the palm print, Petitioner's photograph was included in a photo array shown to Yakubov.  *Id.* at 6; Record at SR047.  Petitioner is a "light-skinned Hispanic man."  Record at SR048.  The photo array "consisted of six photos" solely "depicting light-skinned Hispanic men."  Opp'n at 6; *see* Record at SR047.  When reviewing the images, Yakubov recognized Petitioner as "someone who was at his jewelry store on a prior occasion" but "did not recognize [him] as one of the robbers because Yakubov did not see his face during the robbery."  Opp'n at 6; *see* Record at SR048.

The NYPD arrested Petitioner on October 17, 2017.  *See* Record at SR048.  At that time, Petitioner weighed "170 pounds and stood at 5 feet and 9 inches."  *Id.*; Opp'n at 6.  Upon his arrest, Detective Palmer collected Petitioner's fingerprints and cell-phone number.  Record at SR048; Opp'n at 6.  Using these new prints, the NYPD conducted another print analysis, "comparing [P]etitioner's scanned arrest print to the latent print left at the scene and again determined that there was a match."  Opp'n at 6-7.  "At trial, Yakubov identified [P]etitioner as the person he recognized from the photo array."  *Id.* at 6 (citation omitted).

The NYPD additionally used Petitioner's cell phone number to obtain CSLI pertaining to the night of the Robbery.  This CSLI was obtained by way of a "court-issued order pursuant to the Stored Communications Act," 18 U.S.C. § 2703(d) (the "SCA"), on or around December 5, 2017.  Opp'n at 16; Record at SR001-05, SR048-49.  It placed Petitioner's phone "within a four or five block radius of the crime scene" approximately 20 minutes after the Robbery took place, Opp'n at 7; Record at SR049-50.

Petitioner was indicted on July 12, 2018.  Record at SR049.

On August 30, 2018, Petitioner's trial counsel submitted an omnibus motion moving to suppress all evidence gathered as a result of Petitioner's arrest.  *See id.* at SR022-23.  Trial counsel argued that it was the "tainted fruit" of a "warrantless arrest."  *Id.* at SR023.  On October 1, 2018, New York State Supreme Court Judge Robert Charles Kohm denied the portion of the omnibus motion that sought to suppress evidence.  *Id.* at SR033.  "The People assert that they do not intend to introduce at trial any physical evidence recovered from defendant," Judge Kohm wrote.  *Id.*

About a year later, on October 8, 2019, a jury trial against Petitioner began before New York State Supreme Court Judge Charles S. Lopresto.  Opp'n at 2.  During trial, Petitioner's counsel did not object to the admission of the CSLI.  *Id.* at 20; Pet. at 5; Record at SR049-50.  The

4

evidence against Petitioner thus principally included the CSLI placing him within a four-to-five block radius of the scene approximately 20 minutes after the Robbery, the palm print on Yakubov's car, the surveillance camera footage of the Robbery, and Yakubov's testimony. *See* Record at SR065-71, SR109-114.

On October 23, 2019, the jury found Petitioner guilty of one count of first-degree robbery under New York Penal Law § 160.15(4) and two counts of robbery in the second degree under New York Penal Law §§ 160.10(1), (2)(a). Opp'n at 8; Pet. at 1. On November 22, 2019, Petitioner was sentenced to "a determinate twenty-year prison term and five years of post-release supervision, on the first-degree robbery count, and a determinate 15-year prison term and five years of post-release supervision, on each second-degree robbery count." Opp'n at 8. The state trial court ordered that "the sentences run concurrently with each other and consecutively to a sentence that had not yet been imposed on an unrelated criminal matter pending in federal court." *Id.*

C. **New York State Appeal**

Petitioner appealed his conviction to the New York State Appellate Division, Second Department (the "Appellate Division"), on or around August 25, 2023. *See* Record at SR035-80. On direct appeal, Petitioner raised four issues: (1) whether the People of the State of New York (the "People"), violated his federal and state constitutional rights when they obtained his CSLI without a warrant and whether his counsel violated his federal and state constitutional rights by failing to object to this evidence, (2) whether the verdict convicting him went against the weight of the evidence where the People failed to prove his identity as a participant in the Robbery, (3) whether the Court should strike the sentencing order directing Petitioner's sentence to run consecutively to his not-yet-imposed federal sentence, and (4) whether the 20-year sentence, which

was twice the pre-trial offer made to Petitioner, was excessive. *See id.* at SR043, SR055-79. The People filed an opposition on December 20, 2023, disputing each issue, *see id.* at SR089-125, and Petitioner filed a reply on January 22, 2024, *see id.* at SR128-44.

On June 12, 2024, the Appellate Division largely affirmed the judgment. *Id.* at SR146-47. Regarding Petitioner's CSLI argument, the Appellate Division determined that the issue was "unpreserved for appellate review" and "declined to reach it in the exercise of [its] interest of justice jurisdiction. Moreover, under the circumstances presented," the Appellate Division concluded that Petitioner "was not deprived of the effective assistance of counsel." *Id.* at SR147. Regarding Petitioner's weight-of-the-evidence argument, the Appellate Division held that it was "without merit" and "accord[ed] great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor." *Id.* On the excessive punishment issue, the Appellate Division determined that the "sentence imposed was not excessive," *id.*, however, it did modify the judgment "by deleting the provision thereof directing that the sentences imposed shall run consecutively to a sentence that had not yet been imposed by a federal court," *id.* at SR146.

On June 13, 2024, Petitioner applied for leave to appeal the Appellate Division's decision to the New York State Court of Appeals (the "Court of Appeals"), *id.* at SR148, which Petitioner supplemented on July 2, 2024, *see id.* at SR149-52. The People submitted an opposition on July 23, 2024. *See id.* at SR153-55. Ultimately, the Court of Appeals denied leave on August 1, 2024. *See id.* at SR156.

### D.  Federal Procedural History

On July 8, 2025, Petitioner commenced the instant action. *See generally* Pet. Proceeding *pro se*,[3] he challenges his conviction on three grounds: (1) that his federal constitutional rights

---

[3] Petitioner was represented by counsel throughout all stages of his state-court proceedings but is proceeding unrepresented before this Court. *See* Pet. at 13.

were violated by the admission of illegally obtained CSLI at trial, to which his counsel failed to object; (2) that his conviction went against the weight of the evidence, and (3) that his sentence was excessive.  Pet. at 5-10.  Petitioner asks this Court to vacate the state-court judgment and release him from prison.  *Id.* at 15.

On July 10, 2025, this Court issued an order to show cause directing Respondent to file a responsive pleading by September 8, 2025, and Petitioner to file a reply, if any, by October 8, 2025.  *See* Order, Dkt. 3.

Petitioner then sent a letter requesting a stay and abeyance while he exhausted his claims in state court.  *See* Letter from Petitioner to the Court (July 21, 2025), Dkt. 4.  Respondent opposed that request on August 13, 2025, *see* Letter from Respondent to the Court (Aug. 13, 2025), Dkt. 6, and Petitioner filed a reply on August 28, 2025, *see* Letter from Petitioner to the Court (Aug. 28, 2025), Dkt. 7.  On September 9, 2025, the Court issued an order denying Petitioner's request for a stay and abeyance on the basis that Petitioner had already exhausted his claims.  *See* Order, Dkt. 9.

After receiving two extensions, *see* Order, dated Sep. 4, 2025; Order, dated Sep. 29, 2025, Respondent filed the underlying Record and an answer to the Petition on October 30, 2025, *see generally* Record; Opp'n.  In opposition to Petitioner's request for relief, Respondent asserts that: (1) Petitioner's CSLI claim is barred under *Stone v. Powell*, 428 U.S. 465 (1976), and the state court reasonably rejected Petitioner's related ineffective-assistance-of-counsel claim; (2) Petitioner's weight-of-the-evidence claim is not cognizable on habeas review; and (3) Petitioner's excessive sentence claim is also not cognizable on habeas review and any claim he was vindictively sentenced is meritless.  Opp'n at 10-25.

By letter dated December 3, 2025, Petitioner requested an extension of time to file his reply. *See* Letter from Petitioner to the Court (Dec. 12, 2025), Dkt. 14. Petitioner's request was docketed on December 12, 2025, *see id.*, and the Court granted the extension request that same day, *see* Order, dated Dec. 12, 2025.

By letter dated December 11, 2025, Petitioner requested the appointment of *pro bono* counsel. *See* Letter from Petitioner to the Court (Dec. 11, 2025), Dkt. 15. This request was docketed on December 18, 2025, *see id.*, and the Court denied it the following day, determining that Petitioner had not established that his case was "likely to be of substance." Order, dated Dec. 19, 2025 (quoting *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203 (2d Cir. 2003)).

To date, the Court has not received a reply from Petitioner in further support of his Petition.

## LEGAL STANDARD

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 ("Section 2254" or "§ 2254") limits federal district courts' ability to consider an "application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State Court." § 2254(a). District courts may hear an application "only on the ground" that an individual "is in custody in violation of the Constitution or laws or treaties of the United States." *Id.*

In doing so, federal district courts must apply the standard of review set out in § 2254. Section 2254 permits federal habeas review of a state court's decision on the merits of a petitioner's claims where the state-court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." §§ 2254(d)(1)-(2); *see Englert v. Lowerre*, 115 F.4th 69, 80 (2d Cir.

2024), *cert. denied sub nom.*, *Englert v. Bishop*, 145 S. Ct. 2826 (2025).  Commonly known as "AEDPA deference," *Carew v. Morton*, 150 F.4th 150, 160 (2d Cir. 2025), this standard of review is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under § 2254(d)(1), "clearly established" federal law "refers only to the holdings of the Supreme Court extant at the time of the relevant state court decision."  *Englert*, 115 F.4th at 81 (first quoting *Jackson v. Conway*, 763 F.3d 115, 134 (2d Cir. 2014); then citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  A decision is "contrary to . . . clearly established Federal law," § 2254(d)(1), "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or the state court "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts," *Englert*, 115 F.4th at 80 (alteration in original) (quoting *Williams*, 529 U.S. at 412-13).  A decision "unreasonabl[y] appli[es] . . . clearly established Federal law," § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case," *Englert*, 115 F.4th at 80 (alteration in original) (quoting *Williams*, 529 U.S. at 413).

Under § 2254(d)(2), a "state court's finding might represent an 'unreasonable determination of the facts' where, for example, reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding or where the court ignored highly probative and material evidence."  *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (first citing *Wiggins v. Smith*, 539 U.S. 510, 528 (2003); then citing *Miller-El v. Cockrell*, 537 U.S. 322, 346 (2003)); *accord Jimenez v. Stanford*, 96 F.4th 164, 198 (2d Cir. 2024).  A state-court factual determination is not, however, unreasonable "merely because the federal

9

habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Reasonable disagreement is "not sufficient to supplant the state court's factual determination." *Cardoza*, 731 F.3d at 178 (citing *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)). Further, § 2254(e)(1) "requires that federal habeas courts afford a presumption of correctness to a State court's factual determinations, 'rebuttable only upon a showing of clear and convincing evidence of error.'" *Jimenez*, 96 F.4th at 195 (quoting *Cosey v. Lilley*, 62 F.4th 74, 83 (2d Cir. 2023)); *see* § 2254(e)(1) (A "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Because Petitioner is proceeding *pro se*, the Court reads his "submissions liberally and interpret[s] them to raise the strongest arguments they suggest." *Nowakowski v. New York*, 835 F.3d 210, 215 (2d Cir. 2016) (quoting *Wright v. Comm'r*, 381 F.3d 41, 44 (2d Cir. 2004)).

## DISCUSSION

Petitioner seeks habeas corpus relief on three grounds: (1) that Petitioner's constitutional rights were violated by the admission of illegally obtained CSLI at trial, to which Petitioner's counsel failed to object; (2) that Petitioner's conviction was against the weight of the evidence; and (3) that Petitioner's sentence was excessive. The Court analyzes each in turn.

### A. Petitioner's CSLI and Ineffective-Assistance-of-Counsel Claims

On direct review, Petitioner made two, interrelated constitutional claims regarding the admission of his CSLI. First, he asserted that the People "violated [his] constitutional rights when they seized [his] CSLI without a warrant based on probable cause" and, second, he argued that "defense counsel was ineffective for failing to object to this key evidence." Record at SR055; *see id.* at SR055-65 (citing U.S. CONST. amends. IV, VI). In making the first argument, Petitioner

10

conceded that it "was not preserved" for appeal due to his trial counsel's failure to object at trial but urged the Appellate Division to still consider it "in the interest of justice." *Id.* at SR059.

The Appellate Division "decline[d] to reach" the Fourth Amendment CSLI argument "in the exercise of [its] interest of justice jurisdiction" because the issue was "unpreserved for appellate review." *Id.* at SR147 (citing *People v. Cunningham*, 147 N.Y.S.3d 140 (2d Dep't 2021)).[4] On the Sixth Amendment ineffective-assistance-of-counsel argument, the Appellate Division concluded that "under the circumstances presented here, [Petitioner] was not deprived of the effective assistance of counsel." *Id.* (first citing *People v. Benevento*, 697 N.E.2d 584 (N.Y. 1998); then citing *People v. Gordon*, 150 N.Y.S.3d 591 (2d Dep't 2021)).[5]

Petitioner raises the same arguments here. He argues that the "[p]rosecution introduced Cell Site Location Information (CSLI) which at the time of trial was obtained illegally" and that "[c]ounsel proved himself ineffective for failing to object at trial to the introduction of CSLI." Pet. at 5. In opposition, Respondent first asserts that Petitioner's Fourth Amendment claim is barred by *Stone v. Powell*, which prohibits federal habeas corpus relief on a claim that trial evidence was recovered through an illegal search or seizure "where the State has provided an opportunity for

---

[4] The Court notes that the Appellate Division's Fourth Amendment decision likely gives rise to a procedural default. *See, e.g.*, *Carew*, 150 F.4th at 160 (discussing procedural default where, as here, counsel failed to make an objection during trial and the Appellate Division subsequently declined to consider it on that basis). Respondent did not, however, raise this affirmative defense, *see* Opp'n, and may have waived it as a result, *see Trest v. Cain*, 522 U.S. 87, 89 (1997) ("Thus, procedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter.'" (quoting *Gray v. Netherland*, 518 U.S. 152, 166 (1996)). Although the Court may choose to raise this issue *sua sponte*, *see Washington v. James*, 996 F.2d 1442, 1448 (2d Cir. 1993), it declines to do so here, *see Trest*, 522 U.S. at 89 ("We are not aware of any precedent stating that a habeas court *must* raise such a matter where the State itself does not do so."). The parties have not briefed this issue, and as explained in detail below, Petitioner's claim is nevertheless barred by *Stone v. Powell*.

[5] The Appellate Division did not provide any explanation for its decision beyond the quoted text. Nevertheless, "[a] claim is 'adjudicated on the merits' if the state court ruled on the substance of the claim rather than on a procedural ground," *Jordan v. Lamanna*, 33 F.4th 144, 150 (2d Cir. 2022) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001))—in other words, if it "disposes of the claim 'on the merits'" and "reduces its disposition to judgment," *Sellan*, 261 F.3d at 312 (quoting § 2254(d)(1)). The "absence of an explanation does not absolve" a federal court from analyzing habeas claims. *Sellan*, 261 F.3d at 312.

full and fair litigation of a Fourth Amendment claim." Opp'n at 10-11 (first quoting *Stone*, 428 U.S. at 482; then citing *Graham v. Costello*, 299 F.3d 129, 133-34 (2d Cir. 2002)). Respondent further contends that the Appellate Division reasonably rejected the ineffective-assistance-of-counsel claim because, at the time the CSLI was obtained, the U.S. Supreme Court had not yet required search warrants to obtain CSLI under *Carpenter v. United States*, 585 U.S. 296 (2018). Opp'n at 16. Instead, New York had proceeded pursuant to an SCA order and had acted in good faith pursuant to that authority. *Id.* at 16-17. The Court begins with Petitioner's Fourth Amendment claim and then turns to Petitioner's Sixth Amendment claim.

### 1. The Fourth Amendment

Petitioner's Fourth Amendment CSLI claim is barred by *Stone v. Powell.* In *Stone*, the U.S. Supreme Court restricted federal courts' ability to hear Fourth Amendment claims in habeas petitions unless a petitioner "shows that the state denied him an opportunity for full and fair litigation." *Ethridge v. Bell*, 49 F.4th 674, 684 (2d Cir. 2022) (citing *Stone*, 428 U.S. at 494 n.37). "To do so, a petitioner must establish either that [1] 'the state has provided no corrective procedures at all to redress the alleged fourth amendment violations,' or, [2] 'if the state has provided a corrective mechanism,' that the petitioner 'was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Id.* (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)).

Reading the Petition liberally, Petitioner has not made this showing. On the first prong, the Second Circuit has held that "New York state courts provide facially adequate procedures to redress Fourth Amendment violations." *Id.* at 686 (quoting *Capellan*, 975 F.2d at 70 n.1); *see also Gray v. Lamanna*, 17-cv-6324 (BMC), 2021 WL 4844536, at *8 (E.D.N.Y. Oct. 18, 2021) (collecting cases). And, on the second prong, no "unconscionable breakdown" occurred in New

York's procedures for reviewing Fourth Amendment claims.  In *Capellan*, the Second Circuit provided examples of "the sort of 'disruption or obstruction of a state proceeding' typifying an unconscionable breakdown," for instance, if the state court "yielded to mob intimidation of the jury" or if "the process furnished was 'claimed to be meaningless [because] the totality of state procedures allegedly did not provide rational conditions for inquiry into federal-law . . . questions.'"  975 F.2d at 70 (first quoting *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987); then quoting Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 HARV. L. REV. 441, 456-57 (1963)).  As the Record reflects, however, no such breakdown occurred here.  Petitioner took advantage of New York's procedures: he had the opportunity to move to suppress the CSLI pretrial, which he seized by filing an omnibus motion that sought to suppress all evidence obtained as a result of his arrest.  *See* Record at SR022-23.  He had the opportunity to challenge the admission of the CSLI at trial.  *See id.* at SR062-64.  He had the opportunity to appeal, which he took, first to the Appellate Division and then to the Court of Appeals.  *See id.* at SR055-60, SR133-39, SR147-52, SR156.

Although the trial court ultimately rejected his motion to suppress, *see id.* at SR033, and his counsel failed to object at trial, Opp'n at 20; Pet. at 5; Record at SR049-50, the focus of the unconscionable breakdown inquiry is on "the existence and application of the *corrective procedures* themselves" rather than on the "*outcome* resulting from the application of adequate state court corrective procedures," *Capellan*, 975 F.2d at 71.  A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective procedures."  *Id.* at 72; *see, e.g.*, *Taylor v. Eckert*, 20-CV-6522-FPG, 2022 WL 901605, at *5-6 (W.D.N.Y. Mar. 28, 2022) (holding that the petitioner's Fourth Amendment claim was

13

barred where, as here, the petitioner argued that his rights were violated by the state prosecution's collection of his CSLI under the SCA before *Carpenter*).

Accordingly, Petitioner's Fourth Amendment claim is barred from habeas review.

### 2. The Sixth Amendment

Petitioner's Sixth Amendment claim also fails. To establish ineffective assistance of counsel, a petitioner must meet the two-pronged test clearly established by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show "*both* 'that counsel's performance was deficient' *and* 'that the deficient performance prejudiced the defense.'" *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017) (emphasis added) (quoting *Strickland*, 466 U.S. at 687). Performance is deficient where it falls "below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 688). A petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Courts apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Deficient performance prejudices the defense where a petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Notably, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687, 693).

14

"Surmounting *Strickland*'s high bar is never an easy task," and it is made "all the more difficult" in the § 2254 habeas context. *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Applying AEDPA deference, the "operative question in reviewing a state court's *Strickland* ruling is . . . 'not whether a federal court believes the state court's determination was incorrect[,] but [rather] whether that determination was [objectively] unreasonable—a substantially higher threshold." *Waiters*, 857 F.3d at 478 (alterations in original) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "[T]o justify relief," a petitioner is "required to establish 'that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103).

The Appellate Division's decision was not objectively unreasonable. Petitioner was arrested on October 17, 2017. Record at SR048. The People subsequently applied for and obtained an order for Petitioner's CSLI pursuant to the SCA on December 5, 2017. *See id.* at SR001-05. There is no dispute that the People obtained that information lawfully under the prevailing legal standards governing CSLI at that point in time. *See id.* at SR048-49; Opp'n at 16. Instead, Petitioner focuses on his trial counsel's failure to object to the admission of the CSLI at trial due to the U.S. Supreme Court's subsequent decision in *Carpenter v. United States*, which held that a "warrant supported by probable cause" is generally required to obtain CSLI, 585 U.S. at 316, and which was published on June 22, 2018, a little more than a year before Petitioner's trial began, on October 8, 2019, Opp'n at 2.

Post-*Carpenter*, the Second Circuit has upheld pre-*Carpenter* orders lawfully issued pursuant to the SCA under the "'good faith' exception," which provides that suppression is unwarranted where the government "act[s] with an objectively reasonable good-faith belief that

15

their conduct is lawful." *See United States v. Zodhiates*, 901 F.3d 137, 143 (2d Cir. 2018) (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)).  "This exception covers searches conducted in objectively reasonable reliance on appellate precedent existing at the time of the search."  *Id.* (citing *United States v. Aguiar*, 737 F.3d 251, 259 (2d Cir. 2013)).  In December 2017, when New York investigators obtained the SCA order for Petitioner's CSLI, appellate precedent (namely, the third-party doctrine) did not require a warrant.  *See id.* (collecting cases).  With that context in mind, it was not, therefore, objectively unreasonable to conclude that Petitioner's trial counsel acted "within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689; *see, e.g.*, *United States v. Williams*, 10-cr-622 (ADS), 2018 WL 4623017, at *4-5 (E.D.N.Y. Sep. 26, 2018) (determining that *Strickland*'s deficient performance prong was not met where a defendant claimed his counsel was ineffective for failing to suppress CSLI obtained *pre-Carpenter*).

Nor was the Appellate Division's decision objectively unreasonable with respect to prejudice.  Even if Petitioner's trial counsel had objected to the admission of the CSLI, suppression would have been unwarranted under the good-faith exception to the exclusionary rule.  *See Zodhiates,* 901 F.3d at 143-44; *Harrell v. Miller*, 22-238-pr, 2023 WL 4479325, at *4 (2d Cir. July 12, 2023).  In other words, the CSLI would have still been admitted, and the result of the trial would have been no different.  *See, e.g.*, *Harrell*, 2023 WL 4479325, at *4 (finding no prejudice where suppression of CSLI obtained pursuant to the SCA pre-*Carpenter* would have been unwarranted (citing *People v. Edwards*, 97 N.Y.S.3d 418, 422-23 (N.Y. Sup. Ct. 2019)); *Cutts v. Miller*, 19-cv-10721 (LJL), 2021 WL 242891, at *8 (S.D.N.Y. Jan. 25, 2021) (same); *cf. United States v. Johnson*, 804 F. App'x 8, 11 n.1 (2d Cir. 2020) (acknowledging the same principle).

16

Accordingly, Petitioner's Sixth Amendment claim fails, and Petitioner is not entitled to habeas relief on this ground.

### B.  Petitioner's Weight-of-the-Evidence Claim

On direct appeal, Petitioner argued that his conviction went "against the weight of the evidence."  Record at SR065-66 (citing C.P.L. § 470.15(5)); *see id.* at SR0065-71, SR139-40.  He discussed how "no witness could identify [him] as one of the participants in the [R]obbery," *id.* at SR065, and that "only two pieces of circumstantial evidence" linked him to the Robbery: "the improperly obtained CSLI showing the location of [his] cell phone and [his] palm print found on Yakubov's car," *id.* at SR139.  This evidence, Petitioner asserted, was "consistent with reasonable hypotheses of innocence."  *Id.* at SR065.

After "conduct[ing] an independent review of the weight of the evidence," the Appellate Division found Petitioner's argument to be "without merit."  Record at SR147.  The Appellate Division "accord[ed] great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor" and was "satisfied that the verdict of guilt was not against the weight of the evidence."  *Id.* (citations omitted).

Before this Court, Petitioner presents the same argument.  He asserts:

> The victim was unable to identify appellant as one of his attackers.  No eye witness was produced.  The victim stated when he was questioned after the robbery to describe his assailants and described both men as being darkskin black men.  Later after seeing a photo array in which appellant[']s picture was present, victim still could not identify appellant as one of his attackers.  Afterw[a]rds at a Grand Jury proceeding victim testifies that both of his attackers were light skin Spanish men.  At trial he again changes story and states that he only saw one of his attackers and assumed both wer[e] black men.

Pet. at 7.  In opposition, Respondent argues that Petitioner's "challenge to his conviction is a state law claim grounded in CPL § 470.15(5) and not cognizable on habeas review" because it "is a

classic challenge to the weight of the evidence, rather than a legal sufficiency claim contending that the People failed to prove the essential elements of the crime charged." Opp'n at 22.

Habeas relief is not warranted on Petitioner's weight-of-the-evidence claim. As Respondent has noted, *see id.*, a weight-of-the-evidence challenge differs from a sufficiency-of-the-evidence challenge in that the former "is grounded in a state statutory provision, C.P.L. § 470.15(5)," while the latter is "based on due process principles." *Williams v. McCarthy*, 708 F. Supp. 3d 309, 332 (W.D.N.Y. 2023) (first citing *People v. Bleakley*, 508 N.E.2d 672 , 674-75 (N.Y. 1987); then citing *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)). As outlined above, federal habeas courts are authorized to review state-court convictions "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). They cannot "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner focuses exclusively on the weight of the evidence and has never presented a legal sufficiency argument to the state court. *See* Record at SR065-71, SR139-40. This claim is therefore "not cognizable on habeas corpus," *Williams*, 708 F. Supp. 3d at 332 (quoting *McKinnon v. Superintendent*, 422 F. App'x 69, 75 (2d Cir. 2011) (collecting cases)), and this Court cannot review it, *see, e.g.*, *Williams*, 708 F. Supp. 3d at 332-33 (declining as not cognizable a weight-of-the-evidence challenge to a robbery conviction under New York law); *Edwards v. Superintendent*, 991 F. Supp. 2d 348, 372 (E.D.N.Y. 2013) (same).[6]

---

[6] Even if Petitioner had raised a legal sufficiency argument, the Court notes the "heavy burden" that Petitioner would have had to satisfy to succeed: "a reviewing court must consider the evidence 'in the light most favorable to the prosecution' and uphold the conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In doing so, the court defers to the jury's assessments of both 'the weight of the evidence [and] the credibility of witnesses.'" *Young v. Collado*, 738 F. Supp. 3d 333, 348 (E.D.N.Y. 2024) (same) (alteration in original) (quoting *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)). Courts consider the state's case "in its totality rather than its parts," and the analysis "may be satisfied by circumstantial evidence alone." *United States v. Hawkins*, 547 F.3d 66, 70-71 (2d Cir. 2008) (alteration in original) (quoting *United States v. Wexler*, 522 F.3d 194, 207 (2d. Cir. 2008)).

18

Accordingly, Petitioner's weight-of-the-evidence claim fails, and Petitioner is not entitled to habeas relief on this ground.

## C. Petitioner's Excessive Punishment Claim

On direct appeal, Petitioner asked the Appellate Division to reduce his sentence in the "interest of justice." Record at SR077. Reduction was warranted, in his view, because the People made plea offers of nine years before the indictment and ten years prior to the start of trial, but the trial court nevertheless imposed a sentence of 20 years, "more than double the pre-indictment offer." *Id.* at SR079. The Appellate Division concluded that "the sentence imposed was not excessive." *Id.* at SR147 (citing *People v. Suitte*, 455 N.Y.S.2d 675 (2d Dep't 1982)).

Before this Court, Petitioner raises the same argument. He contends that his "20 year sentence was more than double the 9 years that was offered pre-indictment and double the 10 years offered post indictment." Pet. at 8. Respondent, in turn, urges this Court to deny habeas relief for two main reasons: (1) the length of the sentence was within the prescribed state law range and (2) there is no evidence to suggest vindictive sentencing. Opp'n at 23-25.

Construed liberally, Petitioner's claim does not merit habeas relief. First, to the extent that Petitioner's excessive sentence claim relies on state law, that claim is not cognizable. *See Izaguirre v. Lee*, 856 F. Supp. 2d 551, 571 (E.D.N.Y. 2012). While the Petition itself does not state any authority, Petitioner's Appellate Division briefs exclusively referenced state, rather than federal, law. Record at SR076-79 (discussing New York Penal Law §§ 70.02(1)(a), 70.02(3)(a), 70.04(3)(a), and 160.15); SR144 (same).

Second, to the extent that Petitioner argues that his sentence was imposed for the impermissibly vindictive reason of punishing him for exercising his right to proceed to trial, that argument also fails. The U.S. Supreme Court has long acknowledged that "[t]he imposition of a

19

penalty upon an individual for choosing to exercise a constitutionally protected right is, of course, improper." *Walker v. Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003) (first citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978); then citing *United States v. Hutchings*, 757 F.2d 11, 14 (2d Cir. 1985)). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher*, 434 U.S. at 363 (citing *North Carolina v. Pearce*, 395 U.S. 711, 738 (1969) (Black, J., concurring in part and dissenting in part), *overruled in part by Alabama v. Smith*, 490 U.S. 794 (1989)). To assure the absence of vindictiveness, the Supreme Court has "found it necessary to 'presume' an improper vindictive motive" in "certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right." *United States v. Goodwin*, 457 U.S. 368, 373 (1982); *see Izaguirre*, 856 F. Supp. 2d at 572-73 (discussing the vindictiveness standard set forth in *North Carolina v. Pearce*). Imposition of that presumption is proper where "there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *See, e.g.*, *Smith*, 490 U.S. at 799-800 (first quoting *Goodwin*, 457 U.S. at 373; then citing *Wasman v. United States*, 468 U.S. 559, 569 (1984)).

Here, Petitioner points solely to the fact that the trial court imposed a sentence that was longer than initially proposed before trial. Pet. at 8; Record at SR076-79 (acknowledging that "the mere fact that a sentence is higher than the pre-trial offer does not conclusively show a defendant was punished for exercising his right to go to trial" but arguing that the disparity was nevertheless "significant enough to support an inference of vindictiveness"). But the "mere fact that the sentence imposed following trial is greater than the offer made during plea negotiations," without more, "does not indicate that a petitioner has been punished for exercising his right to proceed to

20

trial." *Walker*, 259 F. Supp. 2d at 226 (citing *United States v. Araujo*, 539 F.2d 287, 292 (2d Cir. 1976)); *see also Smith*, 490 U.S. at 801.  As set forth, Petitioner's argument is insufficient.  *See, e.g., Walker*, 259 F. Supp. 2d at 226-27 (declining to grant habeas relief where the sole evidence furnished by the petitioner was a sentencing discrepancy); *Ramirez v. Superintendent*, 20 Civ. 8445 (KMK)(PED), 2023 WL 10365903, at *10-11 (S.D.N.Y. Feb. 14, 2023) (same), *report & recommendation adopted sub nom.*, *Ramirez v. Keyser*, 20-CV-8445 (KMK), 2024 WL 1076945 (S.D.N.Y. Mar. 12, 2024).  *Compare Izaguirre*, 856 F. Supp. 2d at 572-80 (determining that habeas relief was warranted on a vindictive sentencing claim).  The state court's decision on this claim did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

Accordingly, Petitioner's excessive sentence claim fails, and Petitioner is not entitled to habeas relief on this ground.[7]

---

[7] To the extent that Petitioner argues his sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment, that claim was not presented to the Appellate Division in the first instance and is, in any event, also not cognizable on habeas review.  It is well settled that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Chambers v. Lilly*, 735 F. Supp. 3d 196, 249 (E.D.N.Y. 2024) ("In other words, habeas relief on this basis necessarily turns on whether Petitioner's sentence for each crime falls within the prescribed sentencing range under state law.").  It is undisputed that the 20-year sentence Petitioner received was within the guidelines permissible under New York law for first- and second-degree robbery under New York Penal Law § 160.15(4) and §§ 160.10(1), (2)(a).  Pet. at 1, 8; Opp'n at 23-24; *e.g., Izaguirre*, 856 F. Supp. 2d at 571 (declining to review an Eighth Amendment claim where the sentence was within the range of years prescribed by New York law); *Williams*, 708 F. Supp. 3d at 337 (same); *Stephens v. McIntosh*, 22-cv-03313 (CBA), 2025 WL 1685232, at *6 (E.D.N.Y. June 16, 2025) (same).

**CONCLUSION**

For the foregoing reasons, the Petition is denied.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

_____*/s/*_____
ORELIA E. MERCHANT
United States District Judge

February 19, 2026
Brooklyn, New York

22